UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMMA ASTRID THIENES,<br>Plaintiff,<br>v.<br>NANCY A. BERRYHILL,<br>Defendant. | Case No. 17-cv-03173-DMR<br>**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 16, 18 |

Plaintiff Emma Astrid Thienes moves for summary judgment to reverse the Commissioner of the Social Security Administration's (the "Commissioner's") final administrative decision, which found that Thienes was not disabled and therefore denied her application for benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. [Docket No. 16]. The Commissioner cross-moves to affirm. For the reasons stated below, the court grants the Commissioner's cross-motion and denies Thienes's motion.

**I. BACKGROUND**

Thienes was 33 years old on February 1, 2008, the alleged onset date of disability. Administrative Record ("AR") 19. She has a high school diploma and past relevant work as an accounting clerk. *Id.* On November 7, 2013, Thienes filed an application for Social Security Disability Insurance (SSDI) benefits, alleging disability due to spinal stenosis, depression, bi-polar disorder, breathing problems, pancreatitis, myofacial pain syndrome, and pernicious anemia. AR 173-79, 192. Her application was initially denied on March 14, 2014 and again on reconsideration on May 30, 2014. AR 131-35, 140-46. Thienes subsequently requested a hearing, which was held before Administrative Law Judge ("ALJ") Maxine R. Benmour on August 12, 2015, and at which Thienes and vocational expert ("VE") David Dettmer testified. AR 81-111.

At the hearing, the ALJ posed the following hypothetical to the VE to determine what jobs

an individual with Thienes's restrictions could perform: an individual with Thienes's age, education, and work background, plus limitations including lifting and carrying 20 pounds occasionally and 10 pounds frequently; sitting for 6 hours in a 8-hour day; standing/walking for 2 hours; occasionally climbing, balancing, stooping, kneeling, crouching, and crawling; occasionally reaching overhead with the non-dominant right upper extremity (right arm); avoiding concentrated exposure to hazards; and limited to simple, repetitive tasks. AR 108. The VE testified that an individual with such restrictions would be unable to perform Thienes's past work, but could perform work in the local or national economy as a mail clerk, DOT code 209.687-026, light, SVP 2; a cashier II with a stool, DOT code 211.462-010, light, SVP 2; and a parking lot attendant, DOT code 915.473-010, light, SVP 2. AR 108-09.

On January 11, 2016, ALJ Benmour issued a decision finding that Thienes was not disabled. AR 10-21. In her written decision, the ALJ applied the five-step sequential evaluation process promulgated by the Social Security Administration ("SSA") to determine whether Thienes was disabled. *Id*. In that process, if at any step the ALJ determines the claimant is or is not disabled, the evaluation does not go on to the next step. 20 C.F.R. § 416.920(a)(4). The evaluation process includes an assessment of a claimant's residual functional capacity ("RFC"), which is "the most [a claimant] can still do" despite physical and mental limitations caused by her impairments. 20 C.F.R. § 416.945. At Step Five, the ALJ determines whether the claimant is able to do any other work considering her RFC, age, education and work experience. 20 C.F.R. § 416.920(a)(4)(v). Should the ALJ decide that the claimant is not disabled, "the [SSA] is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [her RFC] and vocational factors." 20 C.F.R. § 416.960(c)(2).

Applying this five-step sequential evaluation, the ALJ determined that Thienes had the following severe impairments: degenerative disc disease of the cervical spine, tendinopathy of the right shoulder, and degenerative changes in the lumbar spine. The ALJ further determined that these impairments, individually or in combination, did not meet or equal an impairment listed in 20 C.F.R. Part. 404, Subpart P, Appendix 1. AR 12, 14. The ALJ found that Thienes retained the

following RFC: Thienes could perform light work as defined in 20 C.F.R. § 404.1567(b)[1], except that she was limited to standing and/or walking for 2 hours in a 8 hour day; retained the ability to occasionally climb, balance, stoop, kneel, crouch, and crawl; was able to occasionally reach overhead with the non-dominant right upper extremity; must avoid concentrated exposure to hazards; and was limited to simple, repetitive tasks. AR 15. Relying on the opinion and testimony of the VE, the ALJ concluded that the three jobs identified by the VE exist in significant numbers in the national economy, and that Thienes could perform those jobs. AR 20.

Thienes sought review of the ALJ's decision before the Appeals Council, which denied the request for review on April 7, 2017. AR 1-3. The ALJ's decision therefore became the Commissioner's final decision. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011). Thienes then filed suit in this court pursuant to 42 U.S.C. § 405(g). [Docket No. 1].

## II. ISSUE PRESENTED

The sole issue on appeal is whether the ALJ erred in concluding at Step Five that Thienes could perform the jobs of mail clerk, parking lot attendant, and cashier II with a stool, given that the ALJ limited her to simple, repetitive tasks, with occasional reaching overhead with the non-dominant right arm. The ALJ accepted the opinion of the VE, who testified that a hypothetical person with Thienes's limitations could perform those three jobs. AR 108-09. As a result, the ALJ determined that Thienes could perform "work that exists in significant numbers in the national economy," and was not disabled, and therefore denied her application for disability benefits. AR 20-21.

Thienes argues that the reasoning level and reaching requirements for the mail clerk, parking lot attendant, and cashier II positions, as set forth in the Dictionary of Occupational Titles ("DOT"), conflict with the ALJ's RFC, which limited her to simple, repetitive tasks with occasional reaching overhead with the non-dominant right arm. Thienes contends that the ALJ failed to provide a reasonable explanation for relying on the VE's opinion when that opinion conflicted with the DOT, and that no persuasive evidence in the record exists to support the ALJ's

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

3

1 reliance on that opinion.

2 The Commissioner argues that no conflicts exist, and that substantial evidence exists to support the ALJ's Step Five conclusion. The Commissioner also contends that even if the ALJ erred in failing to resolve the conflicts, the error was harmless.

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a mere scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir.1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation and quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## IV. DISCUSSION

At Step Five, the ALJ determines whether the claimant is able to perform any work other than the claimant's past relevant work, considering the claimant's RFC, age, education and work experience. 20 C.F.R. § 416.920(a)(4)(v). Should the ALJ decide that the claimant is not disabled, "the [SSA] is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's

1  RFC] and vocational factors." 20 C.F.R. § 416.960(c)(2).

2  Social Security Ruling ("SSR") 00–4p governs the use of occupational evidence.[2] At Step Five of the sequential evaluation, ALJs rely on the DOT and testimony from vocational experts in making disability determinations. SSR 00–4p, 2000 WL 1898704 at *2 (Dec. 4, 2000). The DOT is a reference guide in the form of a job catalog that contains standardized occupational information about each job. An ALJ is to "rely primarily on the DOT . . . . for information about the requirements of work in the national economy." *Id*. An ALJ may also call upon a VE to provide occupational evidence through testimony at a disability benefits hearing. *Id*.

The DOT provides specific information about each job, including General Education Development ("GED") and Specific Vocational Preparation ("SVP") scores. The GED score includes a reasoning development level score, which "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." DOT, Appendix C. The scale of reasoning development levels is 1 to 6, with 6 being the most advanced level. DOT, Appendix C. The SVP score refers to "'the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.' " *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1230, n.4 (9th Cir. 2009) (quoting DOT, Appendix C, p.1009 (4th ed. 1991)). "'The DOT lists [an SVP] time for each described occupation. Using the skill level definitions in 20 C.F.R. 404.1568 and 416.968, unskilled work corresponds to an SVP of 1–2; semi-skilled work corresponds to an SVP of 3–4; and skilled work corresponds to an SVP of 5–9 in the DOT.'" *Bray*, 554 F.3d at 1230, n.4 (quoting Policy Interpretation Ruling: Titles II & Xvi: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Info. in Disability Decisions, SSR 00-4P (S.S.A. Dec. 4, 2000)).

"When there is [a conflict or an apparent conflict] between the [VE's] testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT

---

[2] SSRs "are entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations." *Massachi v. Astrue*, 486 F.3d 1149, 1152, n.6 (9th Cir. 2006) (citations omitted). In *Massachi*, the Ninth Circuit held that an ALJ must comply with SSR 00–4p before relying on the testimony of a vocational expert. *Id*. at 1150.

5

requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015) (citing *Massachi*, 486 F.3d at 1153-54)); SSR 00–4p, 2000 WL 1898704 at *4 (The ALJ has an "affirmative responsibility to ask about any possible conflict between [the VE's testimony about the requirements of a job] and information provided in the DOT."). The ALJ must first ask the "expert to explain the conflict" and "'then determine whether the vocational expert's explanation for the conflict is reasonable' before relying on the expert's testimony to reach a disability determination." *Zavalin*, 778 F.3d at 846 (quoting *Massachi*, 486 F.3d at 1153-54); SSR 00–4p, 2000 WL 1898704 at *2 ("When there is an apparent unresolved conflict between VE . . . evidence and the DOT, the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled.").

In order to trigger the ALJ's duty to inquire, the conflict between the VE's testimony and the DOT's job description must be "obvious or apparent." *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016). "This means that the testimony must be at odds with the [DOT's] listing of job requirements that are essential, integral, or expected." *Id*.

In *Gutierrez*, the plaintiff could not lift more than five pounds with her right arm or lift that arm above her shoulder. At the hearing, the VE testified that the plaintiff could work as a cashier with those restrictions. The plaintiff appealed the ALJ's failure to address a conflict between the VE's testimony and the description in the DOT, which states that the cashier job requires frequent reaching. The Ninth Circuit held that the ALJ did not err in failing to ask the VE additional questions about the claimant's ability to perform the job of cashier, "because there was no apparent or obvious conflict between the expert's testimony that Ms. Gutierrez could perform as a cashier, despite her weight bearing and overhead reaching limitations with her right arm, and the [DOT]'s general statement that cashiering requires frequent reaching." *Id.* at 808. Relying on common experience, the Ninth Circuit explained that it was "unlikely and unforeseeable" that a cashier would need to reach overhead, or, in the atypical situation, reach overhead with two hands. *Id*. at 808-09, n.2.

Since "the requirement for an ALJ to ask follow up questions is [necessarily] fact-

6

dependent," *Guiterrez*, 844 F.3d at 808, "the more obscure the job, the less likely common experience will dictate the result," and the more incumbent it is on the ALJ to inquire. *Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir. 2017).

In *Lamear*, the Ninth Circuit held that the ALJ erred by failing to resolve the apparent conflict between the DOT listings for office helper, mail clerk, and parking lot cashier jobs and the ALJ's RFC, which limited the claimant's ability to "handle, finger, and feel with the left hand." *Id*. at 1205. Unlike in *Gutierrez*, the Ninth Circuit explained that it could not determine "based on common experience" that it was "likely and foreseeable that an office helper, mail clerk, or parking lot cashier with limitations on his ability to 'handle, finger and feel with the left hand' could perform his duties." *Id*. This was particularly true because the DOT's job descriptions suggested that it was "likely and foreseeable that using both hands would be necessary to perform 'essential, integral, or expected 'tasks in an acceptable and efficient manner." *Id*. (quoting *Gutierrez*, 844 F.3d at 808). Since there was nothing in the record, the DOT, or common experience to resolve this "apparent discrepancy," the Ninth Circuit reversed and remanded in order to allow the ALJ to reconcile the conflict. *Id*. at 1206-07.

"Where the ALJ fails to obtain an explanation for and resolve an apparent conflict—even where the VE did not identify the conflict—the ALJ errs." *Thompson v. Colvin*, No. ED CV 13-1851-SP, 2015 WL 1476001, at *3 (C.D. Cal. Mar. 31, 2015) (citing cases); *see also Massachi*, 486 F.3d at 1153-54 (reversible error where the ALJ failed to ask the VE "whether her testimony conflicted with the [DOT], and if so, whether there was a reasonable explanation for the conflict."); *Zavalin*, 778 F.3d at 847-848 (reversible error where the ALJ "failed to recognize" a conflict between the claimant's limitation to simple, routine tasks and the demands of the Level 3 reasoning jobs); *Lamear*, 865 F.3d at 1206 (reversible error where the ALJ failed to inquire about the apparent conflict between the claimant's left-hand limitations and the VE's testimony).

### A.     Mail Clerk and Cashier II

Thienes argues that the ALJ erred by failing to resolve the conflict between the VE's testimony and the DOT listings for the mail clerk and cashier II jobs. The ALJ limited Thienes to performing simple, repetitive tasks. The VE testified that a person with Thienes's limitations

7

could perform work as a mail clerk and cashier II. AR 108-09. The DOT listings describe the mail clerk and cashier II jobs as requiring Level 3 reasoning. Thienes contends that this results in a conflict, because simple, repetitive tasks generally equate to Level 1 or 2 reasoning, not Level 3 reasoning.

The Commissioner contends that no conflict exists because the VE explained that the mail clerk and cashier II positions were unskilled jobs, which addressed Thienes's RFC limitation to simple, repetitive tasks. The Commissioner also asserts that even if the ALJ erred by failing to resolve a conflict between the VE's testimony and the DOT, the error was harmless because Thienes can still perform work as a parking lot attendant, which requires only Level 2 reasoning.

The court finds that there is an apparent conflict between the Level 3 reasoning requirement in the DOT for the mail clerk and cashier II positions and Thienes's RFC, which limited her to simple, repetitive tasks. The Ninth Circuit has held that "there is an apparent conflict between the residual functional capacity to perform simple, repetitive tasks and the demands of Level 3 reasoning." *Zavalin*, 778 F.3d at 847; *see also Adams v. Astrue*, No. C 10-2008-DMR, 2011 WL 1833015, at *4 (N.D. Cal. May 13, 2011) (explaining that "there appears to be a conflict between" a limitation to "simple, repetitive tasks" and Level 3 Reasoning).

Contrary to what the Commissioner argues, the ALJ erred in failing to resolve this conflict. The VE's testimony that the mail clerk and cashier jobs are unskilled work does not constitute substantial evidence that these jobs only entail simple, repetitive tasks. AR 108-09. The Commissioner's argument conflates two vocational concepts. The first concept defines the job's skill level, as measured by the time needed to learn the job's tasks, and as expressed through an SVP level. The second concept defines the job's overall simplicity—for example, a job that involves simple, repetitive tasks. The simplicity of tasks does not necessarily correlate to the time it takes to learn those tasks.

The SVP level addresses "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, Appendix C, p.1009 (4th ed. 1991)). Using the skill level definitions in 20 C.F.R. 404.1568 and 416.968, unskilled work corresponds to an SVP of 1–

8

2. The SVP does not directly address a job's simplicity, which is "more squarely addressed by GED reasoning [development] level ratings." *Adams*, 2011 WL 1833015, at *5 (citation and internal quotation marks omitted). Several courts have rejected the very argument the Commissioner advances here. *See, e.g., Knuutila v. Colvin*, 127 F. Supp. 3d 1146, 1151, n.2 (D. Colo. 2015) (noting that federal courts "have split" on the issue of whether unskilled work equates to simple, repetitive tasks) (citing cases); *Meissl v. Barnhart*, 403 F. Supp. 2d 981, 983 (C.D. Cal. 2005) ("Other courts [have] decided that, contrary to the Commissioner's argument . . . , the SVP level in a DOT listing indicating unskilled work, does not address whether a job entails only simple, repetitive tasks.") (citing cases); *Adams*, 2011 WL 1833015, at *5 (noting at least one court has "directly addressed and rejected the Commissioner's argument" that "unskilled work is synonymous with a limitation to simple, repetitive tasks") (citing *Meissel*).

*Thompson*, cited by the Commissioner, is factually inapposite. In *Thompson*, the district court held that the ALJ did not err in failing to resolve a conflict between the DOT listing of a Level 3 reasoning requirement for the mail clerk position and the claimant's RFC's limitation to simple tasks, because the VE "explained that the job of mail clerk involved simple, repetitive, non-complex tasks, primarily consisting of sorting incoming mail and delivering it within the office." *Id*. at *5. By contrast, the VE proffered no such explanation here.

However, the ALJ committed harmless error in failing to resolve the conflict between the VE's testimony and the DOT listings for the mail clerk and cashier II positions because, as discussed below, Thienes can perform the work of a parking lot attendant. *See Phillips v. Colvin*, 61 F. Supp. 3d 925, 935 (N.D. Cal. 2014) (the failure of the ALJ to inquire about the conflict between the VE's testimony and the DOT listing for the surveillance-system job was harmless because the two other jobs identified by the VE did not contain any conflicts with the DOT). The VE testified that for the parking lot attendant job, there were approximately 12,000 positions in California, and 55,000 positions in the United States. AR 109. Accordingly, after eliminating the mail clerk and cashier II positions from consideration, there continues to be substantial evidence to support the ALJ's finding that Thienes is "capable of making a successful adjustment to other work that existed in significant numbers in the national economy." AR 20; *see also Barker v.*

*Sec'y of Health & Human Servs.*, 882 F.2d 1474, 1479–80 (9th Cir. 1989) (finding that 1,266 jobs in the local economy constituted "significant numbers" for the purposes of satisfying 42 U.S.C. § 423(d)(2)(A))[3].

**B.     Parking Lot Attendant**

Thienes contends that the ALJ erred in failing to resolve the conflict between the VE's testimony and the DOT listing for the parking lot attendant position. According to the DOT, the parking lot attendant position requires frequent reaching. Thienes asserts that she cannot perform such work based on the ALJ's RFC, which limited her to occasionally reaching overhead with the non-dominant right arm.

The Commissioner disagrees and argues that no conflict exists. According to the Commissioner, Thienes has no limitations with respect to the use of her left arm and therefore is not precluded from performing the work of a parking lot attendant.

The court agrees with the Commissioner. To begin with, there is no "obvious or apparent" conflict between the VE's testimony that Thienes could perform the parking lot attendant position and the DOT listing for that position, which includes the requirement of frequent reaching. The DOT describes the parking lot attendant position as follows: "Parks automobiles for customers in parking lot or storage garage: Places numbered tag on windshield of automobile to be parked and hands customer similar tag to be used later in locating parked automobile. Records time and drives automobile to parking space, or points out parking space for customer's use. Patrols area to prevent thefts from parked automobiles. Collects parking fee from customer, based on charges for time automobile is parked. Takes numbered tag from customer, locates automobile, and surrenders it to customer, or directs customer to parked automobile. May service automobiles with gasoline, oil, and water. When parking automobiles in storage garage, may be designated Storage-Garage

---

[3] The Commissioner also contends that Thienes waived the right to appeal any issues concerning the VE's testimony because her representative did not raise these issues before the ALJ. Since the court finds that the ALJ did not commit reversible error, it need not consider this argument. However, the court notes that least one court in this circuit has rejected the Commissioner's waiver argument in the context of a claimant raising conflicts with the VE's testimony, because, in part, it would "effectively shift the burden of obtaining an explanation for the deviation to [the claimant], rather than the ALJ, which is contrary to the controlling case law." *Avila v. Berryhill*, No. 1:17-CV-00420-EPG, 2017 WL 2889466, at *4 (E.D. Cal. July 7, 2017).

Attendant [] May direct customers to parking spaces." DOT Code 915.473-010 Parking Lot Attendant, 1991 WL 687865 (4th ed. 1991).

Thienes has no general limitation on reaching. Instead, her RFC limits her to occasional reaching overhead with her non-dominant right arm. She has no limit on reaching overhead with her left arm. According to the DOT, the parking lot attendant position requires frequent reaching, which means reaching between one-third and two-thirds of the time. The DOT does not mention the need to reach overhead. Based on a review of the DOT description, as well as a common understanding of a familiar job, it is "unlikely and unforeseeable" that a parking lot attendant would have to reach overhead with both arms with any frequency. *See Gutierrez*, 844 F.3d at 808–09, n.2. The "essential, integral or expected" requirements of the parking lot attendant position are placing tags on the windshields of cars, handing customers parking tags, collecting parking fees from customers, taking tags from customers, locating parked cars, and driving cars to their owners, or directing customers to their parked cars. None of these tasks appear to require overhead reaching with any frequency, particularly with both arms. *See also Vargas v. Berryhill*, No. 1:15-CV-992 GSA, 2017 WL 1272394, at *5 (E.D. Cal. Feb. 3, 2017) (no conflict between the ALJ's RFC limiting claimant to the use of the non-dominant hand for less than 2 hours out of a 8-hour day and the kitchen helper job; "[i]t is not obvious that the job of kitchen helper (which is a familiar job) requires overhead reaching, especially since [the claimant's] limitation only restricts the use of his non-dominant hand for less than two hours out of an eight hour day"); *Lance Nelson Goodman v. Colvin*, No. CV-15-00807-PHX-JAT, 2016 WL 4190738, at *17 (D. Ariz. Aug. 9, 2016) ("[T]he ALJ's left-arm restriction is not inconsistent with the frequent (or constant) reaching demands of the occupations identified by the VE, as each occupation's DOT description does not specifically require reaching with both arms or overhead reaching."); *Givens v. Colvin*, No. C15-5043-RBL-MAT, 2015 WL 5695309, at *8 (W.D. Wash. Sept. 10, 2015), report and recommendation adopted, No. C15-5043-RBL, 2015 WL 5695520 (W.D. Wash. Sept. 28, 2015) (no conflict between jobs requiring "frequent reaching" including the parking lot attendant position and the ALJ's RFC limiting the claimant to no overhead reaching with the right upper extremity; "[t]he DOT does not . . . contemplate how often an individual must reach overhead,

11

reach bilaterally, and/or reach with a dominant or nondominant hand."); *but see Imran v. Colvin*, No. CV 14-1943-PLA, 2015 WL 5708500, at *5-6 (C.D. Cal. Sept. 28, 2015), judgment entered, No. CV 14-1943-PLA, 2015 WL 5708508 (C.D. Cal. Sept. 28, 2015) (implicit conflict between jobs identified by the VE as requiring "frequent reaching" and the ALJ's RFC, which limited the claimant to occasional overhead reaching with upper left extremity, "in part because overhead reaching is a specific subset of reaching;" remanding since the VE "did not specifically confirm that his testimony did not conflict with the DOT requirements for these positions") (citation and internal quotations omitted).

Thienes's contention that reaching overhead is a "likely and foreseeable" part of a parking lot attendant's job is entirely conclusory. She quotes the DOT listing verbatim, but makes no attempt to explain how any of the listed tasks require reaching overhead, much less reaching frequently overhead with both arms. As discussed above, none of the tasks in the DOT appear to require frequent require overhead reaching with one or both arms, nor does common experience suggest that the job entails such movements on any regular basis.

Thienes also contends that *Owensby*, cited by the Commissioner, is off-point because *Owensby* involves the office helper position, which is dissimilar to the parking lot attendant job. She asserts that *Lamear* is factually closer. The distinction she attempts to draw between these cases is unclear because *Lamear* also involves the office helper position. *Owensby*, 2016 WL 5468376, at *9 (The claimant asserts that "the job of the office helper under the DOT requires frequent reaching, which conflicts with the ALJ's RFC finding of occasional reaching.").

Additionally, she misses the point of *Lamear*. In *Lamear*, the Ninth Circuit reversed and remanded because it could not determine, based on common experience or the evidence in the record, that it was "likely and foreseeable that an office helper, mail clerk, or parking lot cashier with limitations on his ability to 'handle, finger and feel with the left hand' could perform his duties." 865 F.3d at 1205. No such ambiguity exists here. Her statement that the parking lot attendant description "foresees" greater use of the shoulders in driving, pointing, and placing tags on windshields every day is entirely conclusory and fails to explain why these tasks require overhead reaching, frequent overhead reaching, or frequent overhead reaching with both arms.

12

Her contention that the parking lot attendant position is similar to the mail clerk position in *Lamear* is also unexplained and seemingly irrelevant.

Finally, Thienes contends that there is a conflict between the DOT listing which requires coordination of arms and hands, and her RFC limitation to occasional reaching overhead with the non-dominant right arm. This argument is entirely opaque. It is unclear how a person who is limited to occasionally reaching overhead with a non-dominant right arm is therefore precluded from performing any work requiring the coordinated use of both arms and hands. Coordinated use of the arms and hands does not necessarily require reaching overhead, particularly in the context of a parking lot attendant job. Thienes points to the fact a parking lot attendant must constantly be involved in directing people and cars, and retrieving cars, and spends only a portion of the time as a cashier. Again, based on common experience, none of these tasks appear to involve the coordinated use of both arms and hands in reaching overhead.

Therefore, the ALJ did not err in failing to resolve the alleged conflict between the VE's testimony and the DOT listing for the parking lot attendant position.

## V. CONCLUSION

In conclusion, the court grants the Commissioner's cross-motion and denies Thienes's motion.

**IT IS SO ORDERED.**

Dated: July 6, 2018



Donna M. Ryu
United States Magistrate Judge

13